1

1          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON
2
UNITED STATES OF AMERICA,      )  Case No. 1:16-cr-02044-SAB-1
3                              )
                  Plaintiff,   )  June 13, 2018
4                              )  Yakima, Washington
vs.                            )
5                              )  Motion Hearing
JASON WILLIAM CATHCART,        )  **REDACTED TRANSCRIPT**
6                              )
                  Defendant.   )  Pages 1 - 65
7
          BEFORE THE HONORABLE STANLEY A. BASTIAN
8             UNITED STATES DISTRICT COURT JUDGE

9  APPEARANCES:

10 For the Plaintiff:          MEGHAN M. McCALLA
                               LAUREL J. HOLLAND
11                             U.S. Attorney's Office
                               402 E. Yakima Ave., Ste. 210
12                             Yakima, Washington 98901

13 For the Defendant:          JEREMY B. SPORN
                               Federal Defenders of Eastern
14                             Washington and Idaho
                               306 E. Chestnut Ave.
15                             Yakima, Washington 98901

16

17

18

19 Official Court Reporter:    Allison R. Stovall, CRR, RPR, CCR
                               United States District Courthouse
20                             P.O. Box 700
                               Spokane, Washington 99210
21                             (509) 458-3465

22

23

24
Proceedings reported by mechanical stenography; transcript
25 produced by computer-aided transcription.

1           (Court convened on June 13, 2018, at 3:01 p.m.)

2           THE COURTROOM DEPUTY:  The matter now before the Court

3   is the United States of America versus Jason William Cathcart,

4   Case No. 1:16-cr-02044-SAB.

5       Counsel, please state your presence for the record.

6           MS. McCALLA:  Good afternoon, Your Honor.  Meghan

7   McCalla and Laurel Holland on behalf of United States.

8           THE COURT:  Good afternoon.

9           MS. HOLLAND:  Good afternoon, Your Honor.

10          THE COURT:  Nice to have you back.

11          MS. HOLLAND:  Thank you, Your Honor.

12          MR. SPORN:  Good afternoon, Your Honor.  Jeremy Sporn

13  with Federal Defenders, along with Investigator Chris Reyes, on

14  behalf of Mr. Cathcart.

15          THE COURT:  Very good.  We're here for a number of

16  pretrial motions.  Hang on just a minute.  Okay.  My focus today

17  has been on the defense motion to suppress.  I realize there's

18  some other motions that require some resolution filed by the

19  Government.  I haven't concentrated on those so much for

20  preparation today, but certainly I will, but I want to focus on

21  the motion to suppress first, and I've got a couple of

22  questions.  Was anybody planning on submitting testimony or

23  presenting testimony today?

24          MS. McCALLA:  Not from the Government's perspective,

25  Your Honor, simply because in its briefing, it noted that it

1    believed these issues were purely legal based on the four

2    corners of the affidavit.

3                THE COURT:  Okay.

4                MS. McCALLA:  And since they did not involve factual

5    issues, we did not plan on --

6                THE COURT:  I just wasn't sure what the intent was.

7                MS. McCALLA:  Yes.

8                THE COURT:  That's fine.  You have every right to

9    present it on the record or not, but I just didn't know what you

10   were intending.

11       Mr. Sporn.

12               MR. SPORN:  The answer to the question is no with the

13   possible exception of Mr. Cathcart himself for a very limited

14   purpose, if necessary.

15               THE COURT:  All right.  Let me ask the rest of my

16   questions, then, and then we can decide if that's going to be

17   necessary or not.

18       Mr. Sporn, if you could approach, I've got a couple of

19   questions before you make any argument.  It might help focus

20   your attention on your argument as well.

21               MR. SPORN:  Sure.

22               THE COURT:  First, just to focus my attention or help

23   focus my attention, what exactly is the defense trying to

24   suppress?

25               MR. SPORN:  It's everything recovered from the

1  forensic -- forensic imaging or forensic search of the -- what

2  we call the Lian Li tower computer.  That was something that was

3  recovered from Mr. Cathcart's home on, I believe, April 5th;

4  contained, I believe, three separate hard drives.  And from what

5  I understand from discovery and the Government's allegations,

6  there were images containing child pornography recovered from

7  all three of those different hard drives on that -- that were

8  contained within that one tower device.

9      There were searches of a number of other different forms of

10  electronic media, but I don't believe anything was -- anything

11  of evidentiary value was ultimately recovered from any of those

12  and no contraband, either.  So we've -- I think in an abundance

13  of caution, we're moving to suppress anything that followed the

14  two search warrants on April 5th and April 8th and any

15  derivative evidence thereof.  But for purposes of today, I think

16  we can focus our inquiry on what was recovered from the Lian Li

17  tower and the hard drives with it.

18          THE COURT:  Let me summarize what I think you've told

19  me.  So you're trying to suppress photographs found on three

20  different hard drives.  All were hooked into or part of the Lian

21  Li tower desktop computer.

22          MR. SPORN:  Yes.

23          THE COURT:  You made reference to derivative evidence.

24  Is there derivative evidence we need to pay attention to?

25          MR. SPORN:  I don't think at this point it -- we need

1  to be too concerned with that.

2          THE COURT:  Okay.  So was all the evidence that you're

3  trying to suppress as part of this motion, it was found then on

4  the Lian Li tower desktop computer.

5          MR. SPORN:  I believe that's right.

6          THE COURT:  Al right.  I'm going to ask both of you to

7  respond to this because it was unclear based on your briefing.

8  Was the computer, the Lian Li desktop computer, seized as a

9  result of the consent given by the wife or was it seized as the

10  result of one of the two search warrants in your opinion?

11          MR. SPORN:  I think initially it was seized as a

12  result of the wife's consent.  There had been a search warrant

13  to include electronic devices in the home, and I would certainly

14  include that amongst that.  But when the officers went to the

15  residence to serve the search warrant, Ms. Cathcart purported to

16  consent to the seizure of that device.  I would --

17          THE COURT:  I just asked about seized.  My next

18  question was searched.

19          MR. SPORN:  Right.

20          THE COURT:  Two different things.  So it's your

21  position that the computer at issue was seized by law

22  enforcement as a result of the consent.

23          MR. SPORN:  I think that's right, yes.

24          THE COURT:  Is that the position that the Government

25  is taking, Ms. McCalla?

1          MS. McCALLA:  Your Honor, the position the

2    Government's taking in that regard in the sense that yes, there

3    was a consent form that the wife signed permitting law

4    enforcement to seize that and other physical items from the

5    residence, but also there was a search warrant --

6          THE COURT:  I understand that.

7          MS. McCALLA:  Right.

8          THE COURT:  But the computer itself was in the

9    possession of law enforcement because of the consent.  It was

10   seized because of the consent by the wife, not -- not seized as

11   the result of the search warrant.  That's what I'm trying to

12   clarify, because there's two search warrants.

13         MS. McCALLA:  Right.

14         THE COURT:  One was found to be insufficient, the

15   other has not yet been challenged, and then there was the

16   consent between the two of them.  And I just want to know why

17   did law enforcement have this computer in its possession.  Why?

18         MS. McCALLA:  Law enforcement had simultaneously

19   obtained consent as well as gotten a search warrant.  However,

20   it is noted that the search warrant to search the physical house

21   for physical items was not executed as a result of having

22   obtained consent.

23         THE COURT:  Okay.  So you're not taking the position

24   that the desktop computer was in law enforcement's possession as

25   a result of the search warrant.  You're taking the position it

1    was seized and in their possession because of the consent by the

2    wife.

3              MS. McCALLA:  That is factually accurate.

4              THE COURT:  All right.  Third question:  Why was the

5    computer searched?  Was it done as a result of the second search

6    warrant or was it done because the Government believes the wife

7    provided consent?

8         Mr. Sporn, your answer first.

9              MR. SPORN:  My answer, Your Honor, is that it was

10   searched pursuant to the April 8th search warrant that was

11   obtained, and that was obtained after Ms. Cathcart purported to

12   provide consent, and I think that's proven by the --

13             THE COURT:  I just want to know your position.

14             MR. SPORN:  That's my position.

15             THE COURT:  I don't -- I don't need the argument just

16   yet.  Again, I'm just trying to focus your attention.  Again, so

17   why was the computer, the Lian Li -- Lian Li desktop computer,

18   why was that searched?  Was it because -- is it your position,

19   the Government's position, it was searched because of the

20   consent given by the wife or was it searched because of the

21   second search warrant?

22             MS. McCALLA:  It's our contention that it was for

23   both.

24             THE COURT:  All right.  Both.  Where is there evidence

25   in the record that you've submitted to the Court that the wife

1  consented to searching the computer?

2          MS. McCALLA:  Will Your Honor ask that question again,

3  please?

4          THE COURT:  Okay.  I'm going to ask a different

5  question to make it a little more complete.  Where in the record

6  that you've submitted -- you've submitted this case on the

7  record.  Where in the record is there evidence that the wife

8  consented to the search?  She, I think, consented to the

9  seizure.  We haven't gotten to the issue as to whether she had

10 legal authority to consent, but you take the position she

11 consented to the seizure.  But where is there evidence that she

12 consented to the search of the computer at issue?

13         MS. McCALLA:  Your Honor can find that executed

14 consent form in Exhibit F of the defense's motion.

15         THE COURT:  Where is there evidence that she had the

16 legal ability to consent to the search of the computer?

17         MS. McCALLA:  That evidence would exist based on the

18 conversations that the law enforcement officers had with her at

19 the time.

20         THE COURT:  I'm glad he had that conversation.  Do I

21 have it?

22         MS. McCALLA:  Your Honor --

23         THE COURT:  You've submitted this on the record.

24 Where in the record is that evidence?

25         MS. McCALLA:  It -- it would be contained in the

1  factual basis that the Government provided to the Court.

2          THE COURT:  Didn't see it.

3      Mr. Sporn, who has the burden of proof to this Court to

4  show that the search warrant on April 8th was validly obtained

5  or was a valid search warrant?  Secondly, who has the burden of

6  proof on the issue of consent, in the defense opinion?

7          MR. SPORN:  Certainly on the issue of consent, it's

8  the Government who has the burden of demonstrating the validity

9  of Ms. Cathcart's apparent or actual authority to -- to consent

10 to that search.  In terms of the burden on the search warrant

11 issue, I -- I guess I'm just having trouble with the question a

12 little bit.

13         THE COURT:  That's fine.  I don't ask great questions

14 all the time but --

15         MR. SPORN:  It's -- I think we just go about making a

16 motion to suppress and -- and have the hearing or not without

17 necessarily thinking too much on who has the burden.

18         THE COURT:  Kind of a legal issue that we just need to

19 decide based on the record is the position you're taking.

20         MR. SPORN:  Yes.

21         THE COURT:  Ms. McCalla, burden of proof issue on

22 consent, and I think I've answered my own question unless you

23 disagree with it on the search warrant.  But on consent.

24         MS. McCALLA:  Well, I think it -- I'm not sure that I

25 understood your initial question regarding where in the record

1  there was evidence of her consent.

2          THE COURT:  I'll give you time to find it.  I didn't

3  see it, and I looked at the record extensively on Monday.  I

4  didn't have time yesterday.

5          MS. McCALLA:  Okay.  There -- there are facts

6  throughout the -- the search warrant affidavit that allude to

7  the information that would support authority to consent.

8          THE COURT:  Great.  Didn't find it, didn't see it.

9  Who has the burden of proof of showing that the consent is --

10  was validly given by the wife?  Is that the Government --

11          MS. McCALLA:  My understanding for any Fourth

12  Amendment challenge, the Government has the burden of proof.

13  However --

14          THE COURT:  And you're submitting this on the record.

15          MS. McCALLA:  I'm not sure I understand the question,

16  Your Honor.

17          THE COURT:  All right.  That's fine.  I think you've

18  already answered.

19          MS. McCALLA:  Okay.

20          THE COURT:  No testimony today?

21          MS. McCALLA:  Not from the Government, Your Honor.

22          THE COURT:  That -- that was the point of the

23  question.  You've submitted your argument on the record.  The

24  evidence that you want the Court to consider, you've submitted

25  on the record.

1           MS. McCALLA:  Yes, Your Honor.

2           THE COURT:  Sorry you misunderstood.  That's why --

3           MS. McCALLA:  I'm sorry.  I'm not -- I wasn't

4   understanding the question.

5           THE COURT:  All right.

6           MS. McCALLA:  But thanks for clarifying.

7           THE COURT:  Okay.  A question then for the Government,

8   and -- and I think this will help resolve this quickly.  Where

9   in the record is there any evidence -- above and beyond the

10  assumption of a police officer, any evidence that abusing your

11  child necessarily means that child porn is on a computer?

12          MS. McCALLA:  Your Honor, the Government in its motion

13  cited to a number of the facts that's contained in the

14  affidavit.

15          THE COURT:  Mr. Sporn, you can -- you can have a seat.

16          MR. SPORN:  Sure.

17          THE COURT:  Do you need time to find that?  Because I

18  couldn't find it.

19          MS. McCALLA:  No, Your Honor.  If I can --

20          THE COURT:  And if you need time, that's fine.

21          MS. McCALLA:  I think I've -- I can cite -- cite it

22  for the Court.

23          THE COURT:  All right.

24          MS. McCALLA:  For example, Your Honor --

25          THE COURT:  This is the second -- the second search

1  warrant, the affidavit in support of that?

2         MS. McCALLA:  Yes, Your Honor.  And the reason the

3  focus is primarily on the second affidavit is that one --

4         THE COURT:  The first one was found to be insufficient

5  so it's really not an issue, is it?

6         MS. McCALLA:  No, I don't know that I'd agree with

7  that, Your Honor, just that --

8         THE COURT:  What part do you disagree with?

9         MS. McCALLA:  That -- one, that it was insufficient,

10 but --

11        THE COURT:  Was it not suppressed?  Was it not found

12 to be insufficient and the evidence suppressed by the state

13 court?  Did I misunderstand that?

14        MS. McCALLA:  The state court did suppress it without

15 information that there had also been consent --

16        THE COURT:  Okay.

17        MS. McCALLA:  -- to search.  But also, Your Honor, the

18 Government did provide in its briefing the issue of separate

19 sovereigns.

20        THE COURT:  Okay.

21        MR. SPORN:  I'm sorry.  The issue of what?

22        MS. McCALLA:  Separate sovereigns.

23        MR. SPORN:  Yeah.

24        THE COURT:  All right.  So what evidence are you

25 submitting to this Court on the record for me to consider, which

1    I think I'm required to do based on the Ninth Circuit case law,

2    to show that there is an evidentiary link between abusing a

3    child and having child porn on a computer?

4            MS. McCALLA:  So the -- the affidavit from Detective

5    Brumley indicates that --

6            THE COURT:  Which one?  Page and line.

7            MS. McCALLA:  We are looking at -- I believe I cited

8    to it in my motion -- Pages 40 and 45.  If I may refer to my

9    motion, I think I referred to it already.

10           THE COURT:  Okay.  That's fine.  Take your time.

11           MS. McCALLA:  And again, Your Honor, I'm relying

12   primarily on the second search warrant for the devices, Pages 49

13   through 50 of Defense Exhibit B.

14           THE COURT:  Okay.  Just so that we're using the same

15   pages, there's Bates stamps down at the bottom.  That would be

16   the easier paging.

17           MS. McCALLA:  Okay.  I'm sorry.  Then 261.

18           THE COURT:  261?

19           MS. McCALLA:  Uh-huh.  And 262.

20           THE COURT:  Okay.  I'm there.  Thank you.

21           MS. McCALLA:  So unlike the cases that defense cited,

22   for example, *Needham,* where it's just the --

23           THE COURT:  Where's the evidence?  Before you argue

24   the evidence, I want to know what evidence you have.

25           MS. McCALLA:  Okay.

1        THE COURT:  Where is it?

2        MS. McCALLA:  It -- it's here, Your Honor.  The

3   officer talks about his training and experience, that he found

4   people to engage in molestation often view and store child

5   pornography.  They --

6        THE COURT:  And hasn't the Ninth Circuit indicated

7   that's insufficient?

8        MS. McCALLA:  The Ninth Circuit has indicated it's

9   insufficient alone.

10       THE COURT:  Okay.  So what more do you have?  That's

11  what I'm asking.

12       MS. McCALLA:  Well, the more in that sense, Your

13  Honor, that's kind of a two-part question that you're asking.

14  It could apply the more in the sense of where's the basis for

15  the detective's understanding, but the more could also be are we

16  talking about totality of the circumstances for the search

17  warrant?

18       THE COURT:  Okay.  What more are you relying on?

19  What's the evidence?  Whatever you want to suggest to the Court

20  as evidence, what is it?  That's what I --

21       MS. McCALLA:  Okay.  As evidence in support of the

22  probable cause for the search warrant.

23       THE COURT:  In addition to this assumption --

24       MS. McCALLA:  Right.

25       THE COURT:  -- that the police officer may --

1          MS. McCALLA:  Okay.  Well --

2          THE COURT:  Which the Ninth Circuit has found to be

3   insufficient to support probable cause to search a computer.

4          MS. McCALLA:  Well, I want to clarify, Your Honor,

5   because the Ninth Circuit has not necessarily invalidated the

6   premise that there is a connection or supposed connection

7   between molestation --

8          THE COURT:  I didn't say that.

9          MS. McCALLA:  No, I know.  But I just wanted to make

10  sure that that's clear because that premise can be used in

11  conjunction with other factors in the totality of the

12  circumstance.

13         THE COURT:  And that's where -- so what other factors,

14  what other evidence is the Government relying on to support this

15  search warrant?

16         MS. McCALLA:  Okay.

17         THE COURT:  Okay.

18         MS. McCALLA:  So let me start with the nexus section

19  as it pertains to that premise that we're talking about.  The --

20  the evidence here is discussing how individuals who engage in

21  molestation can be connected with child pornography, and it's

22  specific in not only the viewing but the distribution, sometimes

23  the manufacturing.

24         THE COURT:  Page and line, Counsel, page and line.

25  Give me a --

1          MS. McCALLA:  There's not -- there's no lines, Your

2    Honor.  It's on Page 261.  I'm first referring to --

3          THE COURT:  But where?  Where is it?  You're giving me

4    argument.  I want to know the facts and the evidence.

5          MS. McCALLA:  No, I'm trying to cite to here.  It's

6    under the nexus heading.

7          THE COURT:  Okay.  Show me.

8          MS. McCALLA:  That's the first paragraph under the

9    nexus heading where --

10         THE COURT:  Right.

11         MS. McCALLA:  -- he's describing this connection.  And

12   then it also talks about the connection that the defendant had

13   made between his statements when he was interviewed regarding

14   child pornography and possession of it.

15         THE COURT:  And where are those statements?

16         MS. McCALLA:  And that's contained in the nexus

17   section also on this page in the second paragraph.

18         THE COURT:  All right.

19         MS. McCALLA:  He also in that particular section talks

20   more specifically about the types of devices that this defendant

21   had in the home as well as his ability to work with electronic

22   devices more thoroughly, and that was actually a point that

23   *Needham* brought up.

24         THE COURT:  Okay.  But he's a computer expert.  I want

25   evidence that shows there's a nexus between abusing a ███████

1    ████    ████    and having child porn on a computer.  That's the issue

2    that the defense has brought to this Court's attention.

3              MS. McCALLA:  Your Honor, so that's -- that's what I'm

4    trying to get at, too.

5              THE COURT:  I mean, of course a computer expert's

6    going to have a lot of computers and is going to know how to use

7    them.

8              MS. McCALLA:  That was actually a factor considered

9    relevant by the Ninth Circuit --

10             THE COURT:  Okay.

11             MS. McCALLA:  -- in that nexus analysis.

12             THE COURT:  Which case?

13             MS. McCALLA:  *Needham*.

14             THE COURT:  All right.

15             MS. McCALLA:  And that's cited by -- by both parties.

16             THE COURT:  All right.

17             MS. McCALLA:  So the specificity with which Detective

18   Brumley makes this connection goes beyond just molesters also

19   can possess child pornography.  If you look on Page 262, Your

20   Honor -- and we're in the -- in the first full paragraph.  For

21   example, Detective Brumley goes into details about the use of

22   cell phones and smart phones and how they are often the devices

23   or among the devices that are used to manufacture child

24   pornography, and then he connects that fact with the facts of

25   this particular case.

1      THE COURT:  The officer is merely reciting his

2    experience and his assumptions.  Where is the evidence that this

3    individual had child porn on his computer?  I know we -- we

4    found the child porn but only after a search warrant was

5    obtained.  The question is was that search warrant obtained

6    correctly.

7          MS. McCALLA:  So yes, Your Honor.  In the Government's

8    motion -- and I didn't -- in each point I make, it's contained

9    in the affidavit; so it refers back to Exhibit B.

10          THE COURT:  Okay.

11          MS. McCALLA:  And if you'd like, I can -- I can make

12   an effort to literally point to every single page that those

13   facts are mentioned in.  But the point is, is that when you're

14   looking at the -- the nexus argument, it can't stand alone,

15   which the Government understands.

16          THE COURT:  Right.

17          MS. McCALLA:  But we are looking at a totality of

18   circumstances, and the facts in support of those totality of

19   circumstances are located in this affidavit in Exhibit B that

20   defense provided.

21          THE COURT:  Okay.  I mean, if -- if you're taking the

22   position that all the facts that you want the Court to consider,

23   all the evidence you want the Court to consider regarding nexus

24   is in this affidavit, then I can do that because I anticipate

25   taking this under advisement.

1          MS. McCALLA:  Well, Your Honor --

2          THE COURT:  But that's what I'm getting at is where is

3     the evidence?

4          MS. McCALLA:  That's --

5          THE COURT:  And you're saying it's in nexus?

6          MS. McCALLA:  Yeah, the whole separate paragraph

7     involving nexus, Your Honor, and that -- that starts on Page 261

8     and goes through 262.  But the point is that nexus paragraph is

9     only part of --

10         THE COURT:  That's what I'm getting at.  Where's the

11    other part?

12         MS. McCALLA:  Yes, Your Honor.  So that was -- that's

13    what I was alluding to is the sense that throughout the

14    affidavit, which starts -- the facts of the case start on Bates

15    Page 253, and it -- it starts with the recitation of

16    ██████████ ████████ ██ ██ ██ ██████████ ███ ████ █████████

17    which is also the subject of the counts in this case.

18         THE COURT:  I'm very familiar with the facts of this

19    case.  What I'm trying to get is where's the evidence of a

20    nexus?  That's what I want to know.

21         MS. McCALLA:  Your Honor, so --

22         THE COURT:  I'm not hearing it.

23         MS. McCALLA:  The evidence of a nexus is what is

24    contained on Pages 261 and 262 of this affidavit.

25         THE COURT:  All right.

1          MS. McCALLA:  However, the point is, is that it's --

2    the evidence of the nexus, Your Honor, is not just the issue.

3    It's -- there is a basis for Detective Brumley to have made that

4    nexus, and those are -- there are facts cited in his nexus

5    section, as I mentioned to the Court, in the paragraphs that I

6    mentioned; and they comport with the Ninth Circuit cases here to

7    include *Needham*, which it indicated, you know, this -- this

8    premise alone, this nexus by itself, cannot stand.  We need to

9    know more, such as what type of access to computers did they

10   have?  That's -- that's a specific indication from *Needham* that

11   is relevant to a nexus.

12         THE COURT:  "They" or "he"?

13         MS. McCALLA:  Well, "they", the individual who is --

14         THE COURT:  "They" being those charged.

15         MS. McCALLA:  "They" being the defendant so -- and

16   there's a -- there's quotations in my -- in my motion that --

17   from *Needham* that indicate that, that -- let me find them for

18   you, Your Honor.

19         THE COURT:  What -- what's the number of your brief?

20   I've read it, but I'm just having trouble finding it.

21         MS. McCALLA:  The ECF number?

22         THE COURT:  Yeah.

23         MS. McCALLA:  34.

24         THE COURT:  Okay.

25         MS. McCALLA:  So in *Needham* on Page 1193 -- this would

1  be Page 11 of my brief, ECF 34 -- the -- the *Needham* court

2  remarked on the probity of a defendant's possession and use of

3  computers or electronic devices concerning the issue of nexus

4  for --

5           THE COURT:  There's different paging on -- what --

6  what page of your brief are you on?  The way ECF does it -- it's

7  probably not your fault but --

8           MS. McCALLA:  Oh, the ECF page number?

9           THE COURT:  Yeah.

10          MS. McCALLA:  Because I filed it restricted, I only

11 have my page numbers, not the pagination from ECF.

12          THE COURT:  What's your page number?

13          MS. McCALLA:  My page number 11.

14          THE COURT:  Okay.  Let me find that for you.  Okay.

15 And you're arguing *Needham*.  Okay.

16          MS. McCALLA:  Yes, Your Honor.

17          THE COURT:  I have it.  Thank you.

18          MS. McCALLA:  So *Needham* specifically indicated that,

19 you know, standing alone, this -- this connection that somebody

20 makes between molestation and child pornography alone is not

21 sufficient, and they cite to the issue of, well, what about the

22 kinds of electronic devices or their use of electronic devices?

23 So *Needham* cites to a particular fact or a particular factor to

24 consider when looking at this nexus; and again, nexus being only

25 one of the totality of the circumstances for the probable cause

1  for the warrant.

2          THE COURT:  All right.  Well, *Needham* stands for the

3  proposition at least -- I don't think just this, but at least

4  that those who molest children are not necessarily likely to

5  possess child pornography.  Is it more likely that they have

6  child pornography on their computer if they're computer experts?

7  Is that what you're suggesting?

8          MS. McCALLA:  *Needham* suggests that -- that there has

9  to be more than just "Just because you molest children, you also

10 possess child pornography."

11         THE COURT:  Right.

12         MS. McCALLA:  And an example of what could be more is

13 their use and access to computers.

14         THE COURT:  Isn't use and access to computers kind of

15 assumed by the fact that we're even having this issue?

16         MS. McCALLA:  No, not necessarily, Your Honor, because

17 child pornography can be printed or be found in books.

18         THE COURT:  Well, I know that.  But if we're talking

19 about -- as *Needham* was, as we are here, if you're talking about

20 finding child pornography on a computer, I think it's assumed

21 that the defendant had access to the computer.  *Needham* says the

22 fact that you abused ███ ██████ doesn't necessarily mean --

23 doesn't provide probable cause to support a search warrant for

24 the defendant's computer.  That's what *Needham* says to me.

25     I'm wondering, and I'm still wondering, what evidence more

1  than that does the Government have, and I don't know what that

2  is.  I have a lot of assumptions a police officer made.  I'm not

3  attacking those assumptions, but *Needham* said we need more than

4  those assumptions.  What are they?

5          MS. McCALLA:  Okay.  And I'm going to cite to the

6  pages in my brief that are not necessarily ECF pages.

7          THE COURT:  Okay.

8          MS. McCALLA:  But Your Honor --

9          THE COURT:  And these will be the pages at the bottom

10 of your briefing?

11         MS. McCALLA:  Yes.  They'll be the bottom right

12 corner.  And so in addition to what had already been provided in

13 the first affidavit starting on Page 13 of my brief...

14         THE COURT:  Are you suggesting the first affidavit for

15 the first search warrant is relevant to the second affidavit?

16         MS. McCALLA:  No, Your Honor.  I just said I didn't

17 repeat everything I had --

18         THE COURT:  I see.

19         MS. McCALLA:  -- discussed from the first one; so it

20 was just simply in addition to what was in the first one.

21         THE COURT:  All right.

22         MS. McCALLA:  Additional facts were made to light in

23 this second affidavit in support of the search of the devices.

24         THE COURT:  Okay.

25         MS. McCALLA:  So in this case -- and they're all

1  listed in the affidavit in Exhibit B -- that the defendant had

2  received a call from -- the wife of the defendant had received a

3  call from him, who -- and he asked her to turn on the computer

4  tower so he could access it remotely, indicating an ability not

5  only to access things remotely and do them electronically but

6  also an ability to do so.

7          THE COURT:  But he's a computer expert.

8          MS. McCALLA:  Right.  And we're not saying, Your

9  Honor, that -- I know the defense makes the argument that, well,

10  that's his job, whatever.  No, that --

11          THE COURT:  No, they didn't say whatever.  They said

12  that is his job, and it was his job.

13          MS. McCALLA:  Well, and they say that's a completely

14  innocuous fact, and I don't think that's a fair assessment of

15  that fact.  The argument is --

16          THE COURT:  Did -- did the police officer put in his

17  affidavit that he's a computer expert and he needed to continue

18  working?

19          MS. McCALLA:  He put in his --

20          THE COURT:  Is that in the affidavit?

21          MS. McCALLA:  Yes, Your Honor.  It's in his affidavit,

22  his statements to law enforcement about the type of work that he

23  does.

24          THE COURT:  Okay.

25          MS. McCALLA:  I can find it for you.  Yeah, that --

1  it's in the affidavit on Bates 255 that the defendant had

2  requested his work computer, which is his laptop and iPad.

3  That's specifically in there.  It's also in there -- forgive me,

4  Your Honor.  I --

5              THE COURT:  No --

6              MS. McCALLA:  -- didn't cite individual pages.  I

7  would've done so if I -- if I knew this was going to be an

8  issue.

9              THE COURT:  Well, how did you not know this was going

10  to be an issue?

11              MS. McCALLA:  No, in the sense of citing to each fact

12  that I provided from the affidavit, where I got that in the

13  affidavit.

14              THE COURT:  But I think *Needham* made it pretty clear

15  this was going to be an issue.

16              MS. McCALLA:  *Needham* made it very clear that this

17  nexus cannot be the sole basis for the search warrant.

18              THE COURT:  And that's what I'm asking.  What other --

19              MS. McCALLA:  Yes.

20              THE COURT:  -- than the assumption from the police

21  officer --

22              MS. McCALLA:  Okay.

23              THE COURT:  I guess I'm surprised that you're saying

24  you didn't know this was going to be an issue.

25              MS. McCALLA:  No.  I mean I didn't know that you

1  wanted particular page cites to the affidavit.  I'm sorry, Your

2  Honor.

3      The second item, Your Honor, is that he owns his own

4  domain, Bach.net.  There's a thorough description of multiple

5  electronic devices that they located throughout the house.  They

6  were in -- out in the open or in unlocked drawers.  That

7  included a digital camera and two hard drives.  They also

8  located -- these two hard drives had photo labels on them

9  labeled Photo A and Photo B.  Officers subsequently learned --

10  this is in the affidavit, Your Honor -- that the wife had

11  indicated, "We don't take that many photos."

12      THE COURT:  They didn't find anything in those files,

13  did they?

14      MS. McCALLA:  Not -- not in a subsequent search, no,

15  but that can't be considered for determination of probable

16  cause.  The defendant's wife indicated that he likes to write in

17  codes for passwords; that the defendant's wife identified the

18  main computer tower in the house, and that's the one at issue

19  here, Your Honor, which was the same that he had asked her to

20  turn on for remote access.  That is also the same computer that

21  he would not need for his work because he already had those

22  electronic devices that he needed for work.

23      THE COURT:  How do I know that?

24      MS. McCALLA:  Because it's in the affidavit.

25      THE COURT:  Okay.

1          MS. McCALLA:  The detective also did some -- he

2    located -- this main tower that's at issue here, Your Honor, was

3    located and cited to in the affidavit.  It's in the basement of

4    the house, and it's connected to a television, external

5    speakers, a keyboard, a drum set, and game controllers.

6          THE COURT:  Is there anything unusual in that?

7          MS. McCALLA:  It's indicative of --

8          THE COURT:  Using computers.

9          MS. McCALLA:  The use of computers; that's right, Your

10   Honor.

11         THE COURT:  Is that -- is that indicative of having

12   child porn on your computer?

13         MS. McCALLA:  Not that fact alone.

14         THE COURT:  Okay.

15         MS. McCALLA:  But in conjunction with all the others,

16   Your Honor.  He also noted that he had preliminarily examined

17   some of the storage devices, at least the ones that he could

18   preliminarily examine, and indicated that he didn't find CP on

19   those that he preliminarily examined.  He also noted that the

20   forensic interview of ███ █ in this case did not result in an

21   outcry.  He also --

22         MR. SPORN:  I'm sorry to interrupt.  I'm not sure what

23   you mean, Ms. McCalla, by "outcry".

24         THE COURT:  I'm -- I'm not sure, either, but --

25         MR. SPORN:  Can you explain?

1          MS. McCALLA:  "Outcry" is a common term that we use to

2     describe when an individual talks about the actual molestation

3     at issue.

4          THE COURT:  Okay.  I'm looking at the interview

5     transcript of A. Cathcart.  I believe that's the wife.  Is there

6     anything in that interview transcript which indicates that she

7     thought there might be child porn on the computers?  Because I

8     read this the other day, and I can't read it again now, but my

9     recollection is that she said she didn't think there was child

10    porn on the computer.

11         MS. McCALLA:  She had stated prior to that interview

12    -- that interview took place after the search.  She had stated

13    in a prior conversation with Detective Brumley that she was

14    concerned after the defendant had made --

15         THE COURT:  Is that in the record?

16         MS. McCALLA:  Yeah.  It's in the affidavit, Your

17    Honor.

18         MS. HOLLAND:  Page 5.

19         THE COURT:  Page 5, is that what I hear?

20         MS. HOLLAND:  Page 5 of the affidavit, Your Honor,

21    midway down the page.

22         MS. McCALLA:  Yeah.  So under -- under Tuesday,

23    April 5th, 2016, the penultimate -- penultimate sentence,

24    Ms. Cathcart said that she was concerned that these devices may

25    contain inappropriate content such as child pornography.

1          THE COURT:  I'm -- I'm looking.  Just hang on while

2   find the...  Oh, okay.  It's kind of the last sentence of that

3   paragraph.  "She's concerned that these devices may contain

4   inappropriate content."  Okay.  I have that now.  Was that in

5   the first affidavit?

6          MS. McCALLA:  I believe it was, Your Honor.  I'd have

7   to -- I'd have to go back and look.  I don't -- I don't want to

8   stray from this affidavit yet, Your Honor.

9          THE COURT:  No, I understand.

10          MS. McCALLA:  But I will do so and -- because I do

11  want to talk about the first affidavit.  But I want to note for

12  the Court that there's additional facts that the Court should

13  consider.

14          THE COURT:  Oh, yes.  I'm looking at the first

15  affidavit.  It is there.

16          MS. McCALLA:  It is there.  Thank you, Your Honor.

17  The additional facts -- and these are also located in the

18  affidavit -- is that --

19          THE COURT:  It's there word for word.  I didn't know

20  that; so I found it.  Go ahead.

21          MS. McCALLA:  Thank you, Your Honor.  When the

22  defendant's wife had told Detective Brumley prior to this

23  affidavit -- because it's obviously contained in the affidavit

24  -- that when she had asked the defendant whether there was any

25  inappropriate content on the computers in the home, the defense

1  response was, "There shouldn't be."  The defendant also called

2  his wife in the jail and asked if she would wash the dirty

3  laundry lying about the house, and she confronted him with the

4  fact that that had already been seized as physical evidence.

5  He'd also asked for his iPhone; and if the Court recalls, that

6  is --

7           THE COURT:  Now, is she the one who said there

8  shouldn't be?

9           MS. McCALLA:  He's the one that said there shouldn't

10  be.

11           THE COURT:  Okay.  What did she say when she was

12  interviewed?  Because I thought she said no.  Am I wrong?  Did I

13  misunderstand the record?

14           MS. McCALLA:  Your Honor, that interview took place --

15           THE COURT:  Yeah, but what did she say?  We'll figure

16  out when it took place after -- what did she say?

17           MR. SPORN:  Can I jump in, Your Honor?

18           THE COURT:  If you can answer that question.

19           MR. SPORN:  I can.  It's in Exhibit D, like David, to

20  our motion.  I have Bates 874 to 875, and that interview was on

21  March 25th prior to the search warrant.

22           THE COURT:  What page?

23           MR. SPORN:  March 31st, excuse me.

24           THE COURT:  What page is it on?

25           MR. SPORN:  874 and 875.

1        THE COURT:  Question:  "Have you ever had any concerns

2   of, like, child pornography with him?"

3        Cathcart:  "No."

4        Someone else:  "Never had anything that you worried about?"

5        "No."

6        Question:  "As far as that goes, okay."

7        Officer:  "Do you know if he used any type of porn or

8   anything like that?"

9        Answer:  Not that I'm aware of -- not that I know of.

10       MS. McCALLA:  Your Honor --

11       THE COURT:  So I guess I'm getting inconsistencies.  I

12  mean, I'm getting a transcript where she says no.

13       MS. McCALLA:  I don't think it's inconsistent, Your

14  Honor.

15       THE COURT:  And then the officer says she says that

16  she's worried; so where is that?

17       MS. McCALLA:  So this interview was in relation to the

18  investigation of the ███████████ ████████ ████ ██ ████ █

19  ██ ██ ██ ████ █████ ████ ████ ███████  That's in

20  connection with had -- ████ ██ ████ █████ ██████ █

21  ██ █████████  These are -- these are questions asked in

22  the past tense.  Now subsequent to the molestation when

23  Detective Brumley is talking to the defendant's wife, she

24  indicates to him her concern that they may contain contraband.

25       THE COURT:  When did she say that?

1          MS. McCALLA:  I don't know that Detective Brumley

2    cited the date in which he --

3          THE COURT:  Why do I have a recorded transcript in

4    which she says she has no concern, but then what's not recorded

5    is an expression of concern?

6          MS. McCALLA:  This --

7          THE COURT:  Why don't we record both of them?

8          MS. McCALLA:  There is a subsequently-recorded

9    conversation with Ms. Cathcart post-search of the devices as

10   well.  This was recorded, I believe, in -- in an immediate

11   response to the allegations of molestation.  From what -- from

12   what is conveyed in this -- this search warrant is -- it even

13   listed dates.  For example, "Tuesday, April 5th, 2016, I

14   received a telephone call from the defendant's wife," and she,

15   you know, asked some questions and she conveyed information that

16   she had learned.  So if the defendant's wife is the one calling

17   the detective, that's not necessarily a planned interview by

18   which to start recording.

19         THE COURT:  Okay.  Now the recording I have, Exhibit

20   D, that was done on March 31st of 2016; no indication of any

21   concern about child porn or computer use or porn on computers.

22   That was --

23         MS. McCALLA:  Your Honor, it's my understanding --

24         THE COURT:  -- the same day that the incident with the

25   ███████████  was reported.

1              MS. McCALLA:  Yes, Your Honor.  So that -- that

2   interview, that initially-recorded interview that you're

3   referring to was in the context of a CPS inquiry as well

4   regarding --

5              THE COURT:  I think CPS and law enforcement typically

6   do those inquiries at the same time, at least that's been my

7   experience.  Is that somehow important?

8              MS. McCALLA:  I would say it's notable because of the

9   purpose of the interview in the sense that CPS --

10             THE COURT:  But the information should be the same.

11             MS. McCALLA:  Well, Your Honor, that's just it, is if

12  the purpose of the interview is to determine whether or not the

13  child is safe in the home that CPS is obligated to know, then

14  they're going to asking questions of what has been the past

15  conduct.

16             THE COURT:  Right.  No, I -- I get that.

17             MS. McCALLA:  Right.

18             THE COURT:  But she was asked about porn in the home

19  and on the computer.  She said she wasn't concerned.  It wasn't

20  there to her knowledge.  It was.  We know it was.

21             MS. McCALLA:  She had no reason --

22             THE COURT:  She had no reason --

23             MS. McCALLA:  -- to believe it would be there.

24             THE COURT:  Right.  But we're getting inconsistent

25  information from the police officer.

1      MS. McCALLA:  I don't --

2      THE COURT:  It's hearsay in the affidavit, but the

3  actual statement from the wife is that she didn't have that

4  concern.  How do I reconcile those two facts?

5      MS. McCALLA:  I don't think they're irreconcilable,

6  Your Honor, and here's the thing.  This is an interview that's

7  done in conjunction with an immediate report of ███████ ███

8  ███ ██████ ██████  CPS is also getting involved to

9  determine whether or not children are even safe in the home.  So

10 there's inquiries, said, ███ ███ ███ ███ ███ ███ ███

11 ███ ███ ███ ███  ███ ███ ███ ███ ███ ███ ███

12 ███ ███ ███ ██ ███ ███ ███ ███ ███ ███

13 ███ ███ ███ ███ ███ ███ ███ ███ ███

14 ███ ███ ███ ███ ███ ███ ███ ███ ██

15 ████████

16     Now you have post-arrest of the defendant for child

17 molestation.  Now the wife ██ ███ ██ ██ ██ ███ ███ ██

18 ██ ██ ██ ████  Now she's starting to think, "Are there

19 concerns?"  She's getting calls from the defendant about, "Hey,

20 can you give me my devices?"  The stuff about, "Can you give me

21 my work devices," that would make sense, right, so that he can

22 continue his work while this case is pending.  However, the

23 calls about, "Can you wash the clothes," "Can you turn on the

24 tower so that I can get documents and that I can save photos

25 regarding the family," "Can you --"

1          THE COURT:  Let me ask one more clarifying question.

2   I see where you're going with that.  So it's your position that

3   the statement that's in the affidavit that she was concerned

4   about child porn came after the recorded statement.

5          MS. McCALLA:  Yes.  And the reason I -- I feel

6   confident saying that is because on Page 255 of the affidavit,

7   it lists the date on which Detective Brumley learned the

8   information, and it was by virtue of a phone call that she made

9   to him.

10          THE COURT:  255?

11          MS. McCALLA:  Yes, Your Honor.

12          THE COURT:  Let me find what you're referring to

13   specifically.  All right.  And that was on April 5.

14          MS. McCALLA:  I'm -- yes, April 5th, 2016.

15          THE COURT:  Is there any other information in the

16   affidavit as to why she has this concern?  I mean, it says what

17   it says and --

18          MS. McCALLA:  Right.

19          THE COURT:  -- I've seen that she's concerned these

20   devices may contain inappropriate content.

21          MS. McCALLA:  Uh-huh.

22          THE COURT:  Such as child pornography.  "Please come

23   to the house and collect all the stuff."

24          MS. McCALLA:  Further down the paragraph, Your Honor,

25   in that same paragraph, it says that the defendant's wife said

1  that today the defendant had called her and requested some

2  additional computers and external media storage devices from the

3  house.

4          THE COURT:  I got lost.  Where is that again?

5          MS. McCALLA:  I'm sorry.  In the same paragraph

6  towards the middle.

7          THE COURT:  I thought you said under that.  Okay.

8          MS. McCALLA:  And so it -- it starts with -- the

9  sentence starts with, "Mrs. Cathcart said that today

10  Mr. Cathcart called her."

11          THE COURT:  Oh, right there.  Okay.

12          MS. McCALLA:  And so that follows the statements in

13  the affidavit that are just above it regarding the fact that he

14  requested his work computers and that they had been provided to

15  him.

16          THE COURT:  Okay.  I understand your -- the position.

17  All right.  On this issue, did you have anything else you'd like

18  to say?  I'd like to hear from Mr. Sporn at some point.

19          MS. McCALLA:  I do, just a couple more things, Your

20  Honor, and it pertains to the question at large that the Court

21  has regarding what evidence is there.  I would note, Your Honor,

22  that it is significant that the defendant, when he was caught

23  ████████ ██ ████ his phone, his iPhone, was in immediate

24  reach of that molestation.

25          THE COURT:  What does that mean?  I mean, people keep

1  their cell phones close to them.  Oftentimes, they use it as an

2  alarm in the morning.

3             MS. McCALLA:  Right.  That's true.

4             THE COURT:  Did they find any porn on his cell phone?

5             MS. McCALLA:  They did not find CP on his cell phone.

6  What they did find, however, Your Honor, was two photos that the

7  ███████████ ██████ ████ ████ ███ ████ ███████ ███

8             THE COURT:  Oh, I realize that, but that had nothing

9  to do with him putting those photos there.  She put those photos

10 there.

11            MS. McCALLA:  No.  The point is, Your Honor --

12            THE COURT:  Understandably so, but that had nothing to

13 do --

14            MS. McCALLA:  Right.  But I -- I'm concerned with the

15 issue of, "Well, did they actually find anything on it," because

16 that's putting the cart before the horse.

17            THE COURT:  Not really.

18            MS. McCALLA:  It is because you can't justify a search

19 by virtue of what you find.

20            THE COURT:  No, I'm not getting there.  I was just

21 trying to make a point.  Are you suggesting to the Court that it

22 would be sufficient to establish probable cause that the ████

23 ████ ████ ████ ████ ████ ████ ███ ██ ██████████ saw

24 a cell phone, and then the officer to come in and say, "It's my

25 training and experience that people who molest ████████████

1   and have cell phones next to them have child porn on their

2   computers," because I don't think that that's sufficient.

3         MS. McCALLA:  I don't think that that's all that there

4   is.

5         THE COURT:  No, but I'm asking are you -- I mean, you

6   brought up the cell phone so I'm asking why is the cell phone --

7   to me, the cell phone being there is completely irrelevant.

8   It's harmless evidence.

9         MS. McCALLA:  No, Your Honor.  We're arguing

10  otherwise.

11        THE COURT:  All right.

12        MS. McCALLA:  And the reason for it is you already

13  have information in the affidavit, based on the training and

14  experience and the type of child pornography cases that exist,

15  that they are -- these images are created on electronic devices

16  and often used with phones that are now computers.  You also

17  have that electronic device in immediate proximity of the

18  defendant during the molestation.  There's a -- there's a

19  connection here.  And I'm not saying that one phone by one

20  defendant who's ███████ ██ ██ automatically indicates CP,

21  but what I'm saying is there is a totality of the circumstances

22  here of which having a cell phone is one, and there are

23  permissible inferences that can be made by law enforcement.

24        THE COURT:  Why didn't the Government bring the

25  detective in so that I could hear from him?  I mean, I'm

1   obviously struggling with the fact that he's saying, "Based on

2   my training and experience, A always leads to B," because that's

3   what he said, and I -- I don't think the Ninth Circuit case law

4   allows me to agree with him nor am I inclined to agree with him.

5   And so why -- why -- why isn't he here?

6          MS. McCALLA:  Your Honor, the Government -- if the

7   challenge to the search warrant is there's not enough probable

8   cause, then we look to the four corners of the search warrant.

9   And the Court has the search warrant, and the facts that are

10  provided by the Government in its response brief on Pages 13

11  through 14 list, I think, 15 factors that support a totality-of-

12  the-circumstances approach in this case that all of which were

13  taken from the affidavit here.  So you have the four corners of

14  the affidavit, Your Honor.

15         THE COURT:  Fair answer to my question.  Thank you.

16         MS. McCALLA:  Would the Court like to hear argument

17  regarding good faith as well or do you want to --

18         THE COURT:  I think I understand the good faith, and

19  we can get to that later.  I want to hear from Mr. Sporn on

20  these other issues.

21         MS. McCALLA:  Okay.

22         THE COURT:  Thank you.

23     Mr. Sporn, as you approach, I think the Government has

24  identified within the four corners of the affidavit the

25  additional evidence that takes this, in their opinion, beyond

1  the facts that we found in *Needham*, which was:  Child molester,

2  therefore there might be child porn.  So how does the defense

3  respond to this additional evidence that's been in the affidavit

4  or brought to my attention in the affidavit?

5          MR. SPORN:  I disagree that it has.  The totality of

6  circumstances, there needs to be something to those

7  circumstances, and I think the Government failed to identify any

8  fact or really any circumstance that gets them off the ground

9  towards a finding of probable cause.  Surely there were things

10 in *Needham* that the Government -- or the police officer could

11 have pointed to as potential evidence that there was child

12 pornography.  They didn't do that.  The fact that there is an

13 effort here at least to point to this factor or that factor, I

14 don't think that imbues those factors with any degree of

15 confidence that we can take from them.  I want to, I guess --

16          THE COURT:  But, I mean, the evidence that Ms. McCalla

17 points out is at least two -- and I'm not saying this is all

18 that she's pointed out, but two that I'm concerned about is,

19 one, the statement that Ms. Cathcart said that she's concerned

20 these devices may contain inappropriate content such as child

21 pornography, and prior to her making -- or prior to that

22 statement in the affidavit, it lists the contacts from the

23 defendant to his wife asking for access to the computers.  And

24 so the argument being the totality of that suggests something

25 suspicious, that the defendant is trying to get the computers

1   before the police do.  Isn't that sufficient to take this beyond

2   the facts that *Needham* had?

3          MR. SPORN:  I don't think it is because if we look at

4   what those facts actually are, they're -- they're really

5   meaningless.  Can I speak to the -- his wife's apparent belief

6   that there may have been child pornography on some of these

7   devices?  She's --

8          THE COURT:  But how -- I mean, how -- we don't have

9   the wife.  All I have is this statement.

10         MR. SPORN:  But I guess the issue is based on what?

11  And she's -- as I mentioned in my briefing, she's not law

12  enforcement.  She's a civilian, and she's angry with the

13  defendant so --

14         THE COURT:  I understand all of that, but the

15  statement is still the statement, and that's what was presented

16  to the judge who issued this warrant.

17         MR. SPORN:  I don't think that they can defend -- that

18  they can depend on that and just use her hunch -- and that's

19  what it is; it's a hunch; it's their suspicion -- and ratify

20  that and get -- get them to probable cause.

21         THE COURT:  It's your suggestion they need more; that

22  in addition to saying that -- that she was getting calls from

23  him asking for access to the computers and she's now concerned

24  about child porn, they need to go beyond that and say here's why

25  she has that concern?

1          MR. SPORN:  I think we need to explore the basis for

2    the concern and whether it's something that's just beyond

3    conjecture and supposition, and I would submit that that's all

4    it is; and she can do that, but the officers cannot in terms of

5    applying for a search warrant.

6          THE COURT:  Well, let's break it down then.  Let's

7    assume there was no information in the affidavit that -- that

8    the defendant was calling her, that that was not in there.  I

9    mean, maybe it happened; maybe it didn't in my scenario, but

10   it's not in here.  So all we have in the affidavit is that

11   Mrs. Cathcart said she has concerns.  It's my assumption you

12   would argue that's insufficient.

13         MR. SPORN:  Correct.

14         THE COURT:  All right.  Well, now let's take the

15   affidavit.  It doesn't just say that.  It says she has these

16   concerns, and it explains -- doesn't do so in the best way, but

17   it suggests that the basis of her concern is because he seems so

18   worried about the computers and he's asking for access.  Doesn't

19   that offer to the -- now if I were the police officer writing

20   this, I would say she has these concerns because of all the

21   phone calls she's getting.  He doesn't say that, but it's all in

22   the same paragraph.  And can't the -- can't the judicial officer

23   granting this search warrant -- isn't that enough to get this

24   beyond *Needham*?

25         MR. SPORN:  I don't think so, Your Honor.

1          THE COURT:  Why not?

2          MR. SPORN:  I don't think there's anything about those

3    calls or that contact or saying, "Get me my work computer," "I

4    want my iPhone," whatever it is, that gets it off the ground.

5    None of that makes it any more likely that those -- that any of

6    those devices contain child pornography.  I think that's the key

7    issue.  And nor does his access to them or ability with

8    computers make it more likely that they actually possess child

9    pornography.

10         I want to correct one thing that the Government said.  It

11   mentioned that Mr. Cathcart had -- had specifically requested

12   his work devices.  That's true, and that's in the affidavit, but

13   it sort of asks the Court to draw a negative inference that

14   because he had specifically requested his work devices that it's

15   somehow suspicious that he would also ask for access remotely to

16   the tower computers, and the negative inference that I'm talking

17   about is that Mr. Cathcart doesn't use that for work purposes.

18   There's nothing in the record to establish that, and the

19   affidavit doesn't say so.  It doesn't say so because they didn't

20   presumably have that -- any knowledge about that fact at that

21   point in time.

22         So I don't think any of the -- you know, can you call --

23   "Can you please wash the clothes so that I'll have something to

24   wear?"  This is -- this is someone who was in custody.  He had

25   just bailed out.  He, I guess, didn't have very many clothes

1  with him.  He had packed his bags in a hurry when he was kicked

2  out of the house.  That's not suspicious.

3      "Can I have my work computer?"  "Can I have access to my

4  iPhone?"  That's not suspicious, either.  I think the Court got

5  the point about the proximity of his iPhone on -- on the

6  nightstand next to the bed.  None of that, I don't believe,

7  makes it any more likely that -- that any of those devices

8  contain child pornography, and I don't think it's proper for law

9  enforcement to simply defer to a lay witness and her conjecture,

10 her -- her hunch.

11          THE COURT:  But I'm saying that whole paragraph taken

12 in its entirety, it's more than just a hunch.  It may or may not

13 be correct, but that's not really the issue.  It's more than a

14 hunch.  She's saying, "I'm now concerned that there's child porn

15 on these computers because I'm getting so much contact from my

16 husband, who's been kicked out of the house, and he's really

17 concerned about the computers."

18          MR. SPORN:  I think it's incumbent on the issuing

19 magistrate judge to take into account not her concern

20 necessarily but the underlying basis for it, the facts that, you

21 know, we've gone around discussing now in terms of his calls for

22 remote access, for laundry and so forth, but I don't think

23 there's any basis there to get any closer to the conclusion that

24 -- that there was likely evidence of child pornography on those

25 devices.  I think it's tangential and wholly incidental to the

1  nature of Mr. Cathcart's work with computers and his -- what he

2  did for a living.

3          THE COURT:  We had some questions about the interview

4  in which she -- she didn't really say that she wasn't concerned

5  about child porn.  The question was a little bit different.  She

6  was more being questioned about pornography, but am I even

7  allowed to consider that in analyzing the motion that you

8  brought since that's not in the four corners of the affidavit?

9          MR. SPORN:  Well, I guess one thing.  It's troubling

10 that it's not in the four corners of the affidavit, that they

11 left it out, and I don't want to necessarily suggest that that

12 by itself is a material omission and get into a whole *Franks*

13 type of analysis, but I think --

14         THE COURT:  We're not in a *Franks* type of analysis.

15         MR. SPORN:  I'm sorry?

16         THE COURT:  We're not into a *Franks* type of analysis

17 because it's my understanding this issue is being submitted on

18 the record.  So I guess what I'm getting at, am I not limited to

19 ruling on your motion based on the four corners of the

20 affidavit?

21         MR. SPORN:  I think the Court can take that into

22 account because certainly at the good faith stage, it goes to

23 the officer's beliefs, to the reasonableness of the belief

24 that -- that there's evidence of child pornography on the

25 devices.

1          THE COURT:  Okay.

2          MR. SPORN:  I did have some prepared remarks if the

3     Court wishes to hear some argument.

4          THE COURT:  If you'd like to, if you have something

5     you'd like to add.  I think I understand the issue.  We haven't

6     gotten to the other issues, and that's -- I don't think I need

7     argument on that today.  But I think I understand the issue here

8     is you're bringing a motion to suppress the evidence found on

9     the Lian Li desktop computer, which was searched in relation to

10    the second search warrant, and I think I -- since there's no

11    testimony being presented, the argument is I have to make that

12    decision based on the four corners of the affidavit.

13         MR. SPORN:  Right.

14         THE COURT:  I think I understand the Government's

15    position regarding where the additional evidence can be found.

16         MR. SPORN:  Well, I guess I would disagree as to

17    the --

18         THE COURT:  I'm -- I'm not ruling in their favor.  I'm

19    saying I understand their argument.

20         MR. SPORN:  Right.

21         THE COURT:  Okay.

22         MR. SPORN:  I think it was illuminating to me sitting

23    there listening how long it took Ms. McCalla to get to the heart

24    of the matter that kept -- the Court kept asking, "But where is

25    the evidence?  What are the facts?"  And Ms. McCalla couldn't

1  answer, not because she's unable to but because the facts really

2  aren't there until we finally got to this issue of the calls and

3  things that we've just discussed.

4          THE COURT:  Well, to be fair to her, the question

5  isn't how long it took her to get there.  It's whether she got

6  there, and that's really the -- the issue that I have to decide.

7          MR. SPORN:  I think that's one way to look at it, and

8  I would disagree that she got there.

9          THE COURT:  That -- that's the issue.  Did she get

10  there or didn't she get there?  I'm really -- I was a little

11  rough on her, and so she -- she got around and answered my

12  question.  And it doesn't matter to this Court that it took

13  15 minutes versus 10 minutes.  It matters whether or not she got

14  there.  You take the position she didn't get there, but I have

15  to decide that based on the four corners of the affidavit,

16  right?

17          MR. SPORN:  That's right.

18          THE COURT:  Okay.

19          MR. SPORN:  But the Court has to look at what the --

20  what the circumstances are, and all I'm seeing in the affidavit

21  -- and particularly in the nexus section of it -- is this

22  collection of strained and illogical inferences that -- that

23  really don't proceed from what the actual facts are from what

24  the Government knows.  It's just conjecture on their part.  It's

25  -- it's a hunch.

1          THE COURT:  Is it conjecture or bad writing?  I mean,

2    that was what I was suggesting.  You know, now that we have this

3    motion and this is under a microscope, if the officer had said

4    more directly, "Ms. Cathcart called and said she's concerned

5    there may be child pornography on the computers because she's

6    received all these contacts and calls from her husband, who was

7    just kicked out of the house," if he said it in that way,

8    doesn't that provide within the four corners of the document the

9    -- the nexus between her suspicion and why she has that

10   suspicion?

11         MR. SPORN:  No, I don't think so.  I don't think there

12   are facts that would permit that sort of nexus to get us to

13   probable cause for child pornography.

14         THE COURT:  All right.

15         MR. SPORN:  I just -- I'm failing to see it, and I'm

16   thinking of other cases where a search warrant's issued or

17   consent is issued where a spouse or someone has actually seen

18   evidence of child pornography on a computer and then gets in

19   touch with the police, but it's where they've seen it.  This is

20   completely different.  This is just a hunch, I would say.

21         THE COURT:  Would it be sufficient if -- if there were

22   evidence that she said, "I'm concerned because I was looking at

23   the computer and saw some evidence"?

24         MR. SPORN:  Yeah, I think so.

25         THE COURT:  Is it enough then for -- for the affidavit

1    to say -- because it doesn't say that, but it does say, "I'm

2    concerned, here's why I'm concerned," and the officer goes on to

3    say, "And there's file A and file B," and the wife says, "We

4    didn't take that many photos."  Does that get us into probable

5    cause territory?

6          MR. SPORN:  No, it doesn't.  I'm not sure that -- that

7    the affidavit itself says that she was concerned -- that she

8    developed this concern particularly because of something else.

9          THE COURT:  She doesn't.  It doesn't say that.  I

10   agree with you.

11         MR. SPORN:  Right.

12         THE COURT:  But I'm just -- the benefit of the doubt,

13   that's the argument that is suggested.

14         MR. SPORN:  Right.  I think -- well, I think the

15   answer to the Court's question was no, that those sorts of facts

16   are not solid enough for the Government to rely on to get

17   probable cause or to come under the umbrella of good faith and

18   objectively reasonable reliance on the warrant.

19         THE COURT:  Okay.  Anything else on the search

20   warrant?

21         MR. SPORN:  Well, I did have a couple of other things,

22   but I think it would be mostly recycling the sorts of things

23   I've said in my briefing and today and some of Your Honor's

24   concerns as well that you highlighted.

25         THE COURT:  All right.  I appreciate your remarks and

1   I appreciate your patience and Ms. McCalla's patience as I asked

2   my questions.  It's an interesting issue.  I'm going to take it

3   under advisement.  I'll try to get a decision as quickly as

4   possible.  That's why I didn't prepare the other motions.  It

5   seems like the other motions the Government has filed sort of

6   relate to this one.  If I were to grant the defense motion, I

7   don't think I need to get to the Government's motion.  If I

8   don't grant the defense motion, do the parties want to be heard

9   on the Government's motions or do you submit those on the

10   briefs?

11         MS. McCALLA:  Regarding the other motions?

12         THE COURT:  I just didn't -- I just ran out of time

13   and didn't prepare those motions.

14         MS. McCALLA:  Right.

15         THE COURT:  So I could take your argument now if you'd

16   like to make it, but it did seem like this case -- the motion to

17   suppress was sort of determination as to where this case was

18   going to head so I need to make that decision first.

19         MS. McCALLA:  Yes, Your Honor.  I understand.  We're

20   happy to be heard now or at a later date as the Court prefers.

21         THE COURT:  Okay.  Let me decide the search warrant

22   motion first, and then we can reschedule if necessary.  Let me

23   -- I guess I should ask this.  It may be an unfair question, but

24   if I were to grant the motion to suppress, does the Government

25   still have a case?

1          MS. McCALLA:  We would have to evaluate, Your Honor.

2          THE COURT:  Okay.  And I'll give you that chance to

3   evaluate.

4          MS. McCALLA:  Your Honor, but if I may, seeing as

5   we've established it's our burden, can I make a couple more

6   points for the Court in its consideration?

7          THE COURT:  Sure.

8          MS. McCALLA:  Thank you.  I just wanted to be clear,

9   Your Honor.  The Government wasn't -- wasn't contesting that

10  it's not our burden.  It was just a matter of with regard to

11  consent issue that it was not raised as an issue in the -- in

12  the brief-in-chief for the suppression, and so -- but what's

13  notable about that, Your Honor, is that the consent preceded the

14  search warrant; so even if the Court did not find the search

15  warrant to be valid, which we're not conceding it was not --

16         THE COURT:  I understand.

17         MS. McCALLA:  But that the Court could still rely on

18  the valid consent of Mrs. Cathcart to search the devices,

19  particularly this device where the evidence was found.  So as

20  the Court knows with regard to --

21         THE COURT:  Let me ask a question about -- about the

22  issue of consent.  We didn't really go into that.  I -- I don't

23  have any problem with the fact that she had the ability to

24  consent to seize, but I don't think there's any evidence in the

25  record -- if you disagree, point it out, but I don't think

1  there's any evidence in the record that she had co-extensive

2  access to this computer, and I -- I think I would need that.  I

3  think if she did, then she could give consent, but if she

4  didn't -- where's the evidence one way or the other?

5          MS. McCALLA:  Well, that's the crux of it, Your Honor,

6  is one -- one, the issue of consent was brought up in a footnote

7  in the defense's arguments in the sense of, "We're just going to

8  attack the search warrants here."

9          THE COURT:  Okay.

10          MS. McCALLA:  So out of an abundance of caution, the

11  Government replied, indicating there was valid consent here but

12  let's talk about the search warrants.  Then defense replied two

13  days ago -- yesterday -- two days ago with their reply regarding

14  why the consent was invalid, and so that -- so the consent issue

15  was not properly brought up before this Court to be heard by

16  evidence.  But nonetheless, in the search warrant affidavits

17  that the Court has before it, there are references to

18  Ms. Cathcart's access to that tower.  There it indicated she

19  shows them where the tower's located in the basement.  She

20  describes that it's a family computer and that other devices

21  like the TV, remote controls --

22          THE COURT:  But that's all hearsay, isn't it?  I mean,

23  I'm --

24          MS. McCALLA:  That's okay.

25          THE COURT:  Really?

1          MS. McCALLA:  For an affidavit?

2          THE COURT:  Right, but the affidavit was submitted to

3    get a search warrant, not to get consent.

4          MS. McCALLA:  No, because you don't have to submit an

5    affidavit to get consent.

6          THE COURT:  Right.

7          MS. McCALLA:  And --

8          THE COURT:  So I have to evaluate whether there was a

9    legal basis for consent.

10         MS. McCALLA:  Well, the point is, Your Honor, it's

11   because it hasn't been properly challenged it exists.

12         THE COURT:  Okay.  You're taking the position that it

13   exists, but you haven't been given the chance.  Is this your

14   position?  You haven't been given a chance to present that?

15         MS. McCALLA:  My -- my point is, Your Honor --

16         THE COURT:  I think I need to hear from the wife if

17   you're going to rely on the consent.

18         MS. McCALLA:  Well, Your Honor, if the Court's going

19   to rely on the information contained in the search warrant, just

20   even if the Court were to hear from another witness about the

21   consent issue, it could still be hearsay.  The rules of evidence

22   don't apply in a suppression hearing.  So whether or not it's

23   hearsay in the affidavit or from another witness, the

24   information is still there in the sense that this computer was

25   accessible by anyone in the home.  It was a family computer.  It

1  was in the basement used for --

2          THE COURT:  No.  What I'm struggling with is that I

3  know that all that information is there, but that's in an

4  affidavit to get a search warrant.  It was not presented to the

5  search warrant court or to this Court for purposes of proving

6  consent.

7          MS. McCALLA:  No, but it is one of the exhibits among

8  the others that the defense provided to include her consent form

9  that they provided in support of their suppression motion.  So

10  that information is still before the Court.

11          THE COURT:  Do I have the consent form as part of this

12  record?

13          MS. McCALLA:  You do, Your Honor.  It's Attachment F

14  of the defense's motion.  That's going to be Bates number, Your

15  Honor, 1029.

16          THE COURT:  I have it.  Okay.

17          MS. McCALLA:  So I just -- I want to make that point

18  to the Court, Your Honor, in the sense that the issue has been

19  briefed by the parties and in their motions, and besides the

20  argument the Court -- the Government has made regarding the fact

21  that there is probable cause for this warrant that there is in

22  fact good faith upon which the officers could rely based on the

23  -- the issuing judge signing off on the warrant, and also they

24  could rely on consent because you can have multiple means by

25  which to properly execute a Fourth Amendment search.

1          THE COURT:  Okay.  I'm looking at the consent form,

2   which is Exhibit F.

3          MS. McCALLA:  Yes, sir.

4          THE COURT:  Okay.  That shows voluntary permission to

5   search premises.

6          MS. McCALLA:  Well, it shows the location, and then it

7   shows the description of the items in that box in the middle

8   there.

9          THE COURT:  Can you hold it up?

10         MS. McCALLA:  Yes, Your Honor.

11         THE COURT:  That's not what I have in front of me.

12  Can you just hand that to me?  Could I just look at it?  I'll

13  give it right back.

14         MS. McCALLA:  Yes, Your Honor.  May I approach?

15         THE COURT:  Yeah.

16         MS. McCALLA:  Your Honor, if I may, I might refer to

17  the second page that describes --

18         THE COURT:  We're looking at different documents.

19  That's fine.

20         MS. McCALLA:  Oh, okay.

21         THE COURT:  Okay.  So you're saying you have a valid

22  written consent to search this particular computer, and the

23  evidence to show that she had the right to give that consent is

24  contained in the affidavit, and that's sufficient for the Court

25  to decide the issue of consent.

1          MS. McCALLA:  It is; well, if the Court even wants to

2   acknowledge that consent is contested in this matter.

3          THE COURT:  I understand that.

4          MS. McCALLA:  Right.

5          THE COURT:  That's why I asked the questions at the

6   beginning that I did because I wanted to focus on what was

7   really at issue.

8          MS. McCALLA:  Okay.

9          THE COURT:  It wasn't clear to me that consent was

10  really at issue today.  I thought we were focused on the second

11  search warrant.

12         MS. McCALLA:  Well, and that was -- that was how the

13  Government read the briefing.  But when -- when considering

14  whether or not there's been a violation of the Fourth Amendment,

15  if there are valid reasons to search property that are not just

16  a search warrant -- and obviously, valid consent is an exception

17  to the search warrant requirement -- then that should be

18  considered by the Court.

19         THE COURT:  Okay.  Mr. Sporn, I guess the one issue

20  I'd like to hear from you on is the argument that we might not

21  even have to even look at the second search warrant because

22  there was consent given by the wife not only to seize the

23  computer but to search the computer and that she had legal

24  authority as a co-owner to provide that consent, and I can make

25  that decision based on an affidavit that was submitted to a

1  different court for purposes of obtaining a search warrant.

2  Your reaction to that.

3          MR. SPORN:  I think that's wrong legally and

4  factually, and here's why.  The -- the search in question was

5  pursuant to the warrant.  We know that because it says so.  The

6  search warrant return says this was a search pursuant to the

7  warrant.  That's why they returned it to -- to the superior

8  court, in contrast to the earlier search warrant return from the

9  earlier April 5th warrant.  That's number one.

10      Number two, it's certainly contested whether Ms. Cathcart

11  had authority to consent to a search of that tower, and I don't

12  think there are any facts in the record --

13          THE COURT:  Okay.  I recognize you're contesting it,

14  but the question is how does the Court decide it?  The

15  suggestion from the Government is I decide it based on the

16  record, which is -- it's been suggested I decide the search

17  warrant issue based on the record.  Do I decide the consent

18  issue based on the record?

19          MR. SPORN:  I think so, and I don't think there are

20  facts in the record based on --

21          THE COURT:  You think I should -- that I can and

22  should decide it based on the record?

23          MR. SPORN:  Yes, yes.

24          THE COURT:  Okay.  And I recognize that you -- you say

25  it leads me down a different path, but the record is sufficient?

1          MR. SPORN:  I think so, yes, and in light of the fact

2   that it's the Government's burden to show the validity of

3   consent and that there are no facts in the record from which the

4   Court can draw a conclusion that Ms. Cathcart had actual or

5   apparent authority to consent to the search of that computer.

6          THE COURT:  Let's assume that the affidavit that we're

7   looking at had a whole bunch of evidence about "I use that

8   computer.  I use it every day.  I use every file on that

9   computer.  I do my --" all kinds of stuff.  Can I make the

10  decision that she gave valid consent based on an affidavit?  I

11  don't know.

12         MR. SPORN:  I don't think so.

13         THE COURT:  I don't get many motions to suppress in

14  this courtroom so I don't know.

15         MR. SPORN:  I don't think it could.  I think it's the

16  Government's burden to come forward with evidence in acceptable

17  form.  That's the reason I asked for a hearing, and they chose

18  not to offer evidence; and in light of the fact that it's their

19  burden, we chose not to offer --

20         THE COURT:  Okay.  Well, that answers my question.

21  You take the position that for me to make a valid ruling on

22  consent, I need to do that based on testimony, not based on

23  hearsay.  Is that your position?

24         MR. SPORN:  That's my position, but I would also add

25  that even if the Court could consider what's in the hearsay --

1          THE COURT:  I understand you say it's insufficient,

2   right.

3          MR. SPORN:  And I think I tried to address that in my

4   reply brief I filed.

5          THE COURT:  I understand those arguments.  I'm just

6   trying to decide whether or not I can make a ruling based on the

7   record.  That's what I'm struggling with.

8          MR. SPORN:  Well --

9          THE COURT:  You say I can't; the Government says I

10  can.

11         MR. SPORN:  Yes, I think you can, and -- and I just

12  want to --

13         THE COURT:  No, you don't say -- I think we're

14  misunderstanding each other.  I think you're taking the position

15  that the Government has to prove consent after presenting some

16  testimony.  You're saying that based on the record, if the

17  Government wants to submit it on the record, my decision should

18  be that there's no consent.

19         MR. SPORN:  Right.

20         THE COURT:  I think that's what you're saying.

21         MR. SPORN:  That's right.

22         THE COURT:  Okay.

23         MR. SPORN:  I just want to get back to the notion that

24  consent wasn't properly brought before the Court.  We submitted

25  a brief attacking the search warrants initially, and the reason

1   we did so is because --

2          THE COURT:  I'm not -- I'm not concerned that, and

3   given the hour, I'm -- I don't need to hear argument on that.

4   I'm going to take this under advisement.  I'm going to ask only

5   this, and again, it's just like I said.  I get a lot of pleas

6   and a lot of sentences but not a lot of suppression motions, and

7   so I'm not an expert on the burden of proof and how I make that

8   decision.  I'm going to ask the Government to think about this.

9       I recognize you've objected that consent was not

10  appropriately put here.  I'm going to give you, let's say, until

11  Friday to think it through, and the two of you talk about it.

12  If you think that you need to present testimony for me to make a

13  decision on consent, I'll give you the opportunity to present

14  that testimony.  If you think that you can submit it to me on

15  the record and you've argued why there's enough evidence in the

16  record, then I'll let you submit it on the record.  I'll just

17  give you an opportunity to think about that because you've

18  expressed some surprise about the consent issue and that you

19  approached this as the search warrant issue.

20      So it seems to me -- and that's kind of why I asked these

21  questions -- is the consent issue kind of deals with the search

22  warrant issue a little bit.  But anyway, I'll give you until

23  Friday.  Is that going to be enough time for you to think about

24  that issue and decide how you want to proceed?

25          MS. McCALLA:  Yes, Your Honor.

1          THE COURT:  Okay.  Obviously, if they want to present

2     some testimony, we'll hear from the wife and all of that but...

3          MR. SPORN:  I should inform the Court that I am

4     scheduled to be at a --

5          THE COURT:  We'll schedule it convenient for you.

6     Don't worry about it.  It's looking like this case won't go to

7     trial on July 9th.  I want to -- I want to make sure we make a

8     good decision on the consent and the search warrant, and I think

9     you've both addressed the search warrant and the ramifications

10    of that adequately for me to make a decision, and I'll start

11    that, but I want to hear from the Government as to how they want

12    to proceed on the consent because I'm not sure.

13          So help me out, and I'll give you until Friday to let Erin

14    know how you want to proceed.  So either you want to present

15    testimony and you think you need to, or you don't think you need

16    to and you'll present it on the record.  Let her know, and then

17    I'll proceed accordingly.  Does that work for you?

18          MS. McCALLA:  That -- that's fine, Your Honor.

19          THE COURT:  Okay.

20          MS. McCALLA:  One thing we did want to confirm with

21    the Court is that the Government intends to proceed to trial on

22    July 9th as scheduled.

23          THE COURT:  Well -- well, good.  I won't be there.

24    There's a motion to suppress that's not been decided.  Until we

25    get that decided, there won't be a trial.

 1          MS. McCALLA:  We anticipated -- will it not be decided

 2  until --

 3          THE COURT:  I don't know.  Until -- until it's

 4  decided, I'm not going to schedule this for trial.  So I

 5  appreciate the fact that you're enthusiastic about a trial, but

 6  we will have a trial after this motion has been decided.

 7          MS. McCALLA:  Okay.

 8          THE COURT:  Mr. Sporn?

 9          MR. SPORN:  And the pendency of the motion stops the

10  speedy trial clock.

11          THE COURT:  I think so, yeah.

12          MR. SPORN:  I don't think there's a need for any

13  waiver.

14          THE COURT:  I didn't ask for one.  Thank you.

15          MS. McCALLA:  Your Honor, and pursuant to the Court's

16  earlier questions regarding where is it in the affidavit, where

17  that evidence is, I -- I took the opportunity to cite to the

18  pages --

19          THE COURT:  Okay.

20          MS. McCALLA:  -- on each numbered --

21          THE COURT:  That's in your brief?

22          MS. McCALLA:  In my brief.  Would the Court like me to

23  recite it per --

24          THE COURT:  No, no.  If you're saying it's in the

25  brief, I'll go back and find that.

1              MS. McCALLA:  Oh, no.  I'm just saying it's not cited

2   specifically to a page number.  The brief just cites back to the

3   exhibit number, but I thought it might be helpful for the

4   Court --

5              THE COURT:  Let me look at what you're looking at, and

6   I'll see if I need anything more.  What are you looking --

7              MS. McCALLA:  Would you like --

8              THE COURT:  Just tell me the page.  I've got your

9   brief right here.

10             MS. McCALLA:  So just Page 13 through 14 of the

11  Government's brief; that's ECF 34.

12             THE COURT:  And there's the paragraphs.  They're

13  numbered 1, 2, 3 on the --

14             MS. McCALLA:  Yeah.  The pieces of evidence that --

15             THE COURT:  I don't need further citation.  That will

16  be sufficient for me.

17             MS. McCALLA:  Okay.

18             THE COURT:  Thank you for pointing this out.

19       Mr. Sporn?

20             MR. SPORN:  I don't have anything further.  Thank you.

21             THE COURT:  Court's in recess.  Thank you.

22          (Court adjourned on June 13, 2018, at 4:19 p.m.)

23

24

25

C E R T I F I C A T E

I, ALLISON R. STOVALL, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Spokane, Washington;

That the foregoing proceedings were taken on the date and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true, and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings;

DATED this 12th day of July, 2018.


_____
ALLISON R. STOVALL, CRR, RPR, CCR
Washington CCR No. 2006
Official Court Reporter
Spokane, Washington

65

C E R T I F I C A T E

     I, ALLISON R. STOVALL, certify that the foregoing is a true
and correct copy of the transcript originally filed with the
clerk of court on July 12, 2018, with the redactions requested
in ECF No. 60 by LAUREL J. HOLLAND, attorney of record, and
directed by the Court in ECF No. 62, Order Granting Motion to
Redact Transcript, signed on August 27, 2018.  Redacted
characters appear as a black box in the transcript.
     DATED this 28th day of August, 2018.




_____
ALLISON R. STOVALL, CRR, RPR, CCR
Washington CCR No. 2006
Official Court Reporter
Spokane, Washington