William D. Hyslop
United States Attorney
Eastern District of Washington
Ian L. Garriques
Assistant United States Attorney
402 E. Yakima Ave., Ste. 210
Yakima, WA 98901-2760
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 1:16-CR-2044-SAB |
| Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM |
| JASON WILLIAM CATHCART, | |
| Defendant. | |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Ian L. Garriques, Assistant United States Attorney, hereby submits the following response to Defendant's sentencing memorandum and his recommendation therein regarding the Rule 11(c)(1)(C) plea agreement in this case. ECF No. 116.

I.      Reasons to Accept the Rule 11(c)(1)(C) Plea Agreement

Based on the Plea Agreement herein (ECF No. 107), the United States recommends a 30-year term of imprisonment on Count 1 and a 30-year term of imprisonment on Count 2, Defendant recommends a 15-year term of imprisonment on Count 1 and a 15-year term of imprisonment on Count 2, and both parties recommend that said terms of imprisonment be imposed *concurrently* to each other and to Defendant's sentence of imprisonment in Yakima County Superior Court Cause No. 16-1-00620-39 (hereinafter referred to as "Defendant's Yakima County sentence.")

The terms of Defendant's Rule 11(c)(1)(C) Plea Agreement allow him to

withdraw from the Plea Agreement if: (a) the Court imposes consecutive sentences of imprisonment on Count 1 and Count 2, which when aggregated, exceed a total term of imprisonment of 30 years; or (b) the sentences of imprisonment on Count 1 and Count 2 are not imposed concurrently to Defendant's Yakima County sentence.

The United States submits that the Court should accept the plea agreement based on the applicable Section 3553(a) factors and also the parties' determination that a resolution at this juncture of the case is in the interest of the Defendant, the victims in this case, and the interests of justice. In sum, the United States submits that concurrent 30-year terms of imprisonment on both counts (effectively a total term of imprisonment of 30 years) satisfies the 18 U.S.C. § 3553(a) factors, so as to allow the Court to accept the plea agreement. In addition, given the related nature of Defendant's state and federal cases, the Court should also accept the parties' agreement that Defendant's federal sentence be imposed concurrently to Defendant's Yakima County sentence.

II.     Section 3553(a) Sentencing Factors

Based on the Section 3553(a) sentencing factors, the Court should impose concurrent terms of imprisonment of 30 years on Counts 1 and 2, as well as, a lifetime term of supervised release. Contrary to Defendant's request for a 15-year total term of imprisonment in his sentencing memorandum, a 30-year total term of imprisonment is warranted here based on the nature and circumstances of the offense, Defendant's history and characteristics, to protect the public, and to provide for deterrence.

With regard to the nature of the offense, the egregiousness of the offense alone calls for 30 years of imprisonment, rather than Defendant's request for 15 years of imprisonment. Defendant's production of child pornography involving four-year old Minor A and eight-year old Minor G, as referenced in the factual basis of his plea agreement below, sufficiently reflect the need for a 30-year term of imprisonment:

> On March 31, 2016, Witness 1 reported to the Selah Police Department (Selah PD) that four-year old Minor A had been molested by the Defendant. Witness 1 found Defendant lying in bed with Minor A. Both Defendant and

Government's Response to
Defendant's Sentencing Memorandum         2

Minor A were nude from the waist down. Witness 1 reported that Defendant made a statement similar to, "No, no, no my life is over." Witness 1 picked up Defendant's iPhone and took two photographs of the scene, one of Minor A and one of Defendant. Minor A was very upset, and Witness 1 had to calm her down. A sexual assault examination of Minor A at the hospital showed that she had been sexually abused, that she had an inflamed genital-anal area and rash.

Later that evening, Defendant turned himself in at Selah PD. Post-Miranda, Defendant stated that had come to the police department, because "This morning I touched [Minor A] in an inappropriate manner. It's not the first incident and [Witness 1] walked in." Defendant continued, "I had her pants down and I was rubbing my penis against her vagina." Defendant again admitted he had done this before. Defendant denied penetrating Minor A, because "she's too little; she's small." Defendant stated that Minor A's pants were down and was just wearing a pajama top. Defendant described the pajamas as blue with candy canes on them. Defendant denied actively trying to view pornography or child pornography. He indicated, "I don't think so, no," regarding whether his laptop or desktop computer would contain pornography. Selah PD obtained consent from Defendant to obtain a DNA sample. Defendant was arrested, and later convicted of, state charges for First Degree Child Molestation involving Minor A.

Various items pertaining to Defendant's sexual abuse and production of child pornography involving Minor A were seized and examined by means of search warrants, such as, Defendant's iPhone, pajamas, bedding, clothing items, computers, and digital media. During the course of a forensic examination, Secret Service SA Huntoon located approximately 2,173 images of child pornography on Defendant's Lian Li desktop tower computer. Many of these images were recovered from unallocated space on the drives, indicating that they had been previously deleted. SA Huntoon also uncovered sexually explicit images of Minor A and Minor G on Defendant's Lian Li desktop computer.

On May 16, 2016, SA Huntoon identified various sexually explicit images that appeared similar to Minor A. After being shown the images, Witness 1 stated that the images actually depicted eight-year old female Minor G. Law enforcement met with Witness 2 who confirmed that Minor G had been at Defendant's residence on several occasions within the past year. Witness 2 identified Minor G in numerous sexually explicit images obtained from Defendant's computer. Witness 2 also identified Minor G's sleeping bag and pajamas in the images, which were then provided to the police. A variety of the images depicted Defendant's penis being inserted into Minor G's mouth and Defendant's fingers being inserted into Minor G's rectum, while other images focused in on Minor G's genital-anal area. Witness 2 indicated that Minor G had been left alone with Defendant on several prior occasions within the last year and on two occasions by May of 2016. Later

Government's Response to
Defendant's Sentencing Memorandum         3

> DNA testing confirmed the presence of Defendant's semen on Minor G's sleeping bag.
>
> On June 3, 2016, while reviewing the computer locations of child pornography produced by Defendant involving Minor G, SA Huntoon located an additional 80 images of child pornography involving Minor G. While reviewing Defendant's Lian Li Desktop Computer, SA Huntoon also located two images of child pornography Defendant had produced involving Minor A. The images displayed bedding seized from Defendant's residence, Minor A's candy cane patterned pajamas, and a penis entering the minor's rectum.
>
> The computers and devices that Defendant used to produce and store the child pornography images of Minor A and Minor G had been mailed, shipped, and transported across state lines and in foreign commerce. Defendant produced the child pornography images of Minor A and Minor G in the Eastern District of Washington. Further, Defendant used Minor A and Minor G to take part in sexually explicit conduct for the purpose of producing visual depictions of such conduct.

ECF No. 107.

In addition to Defendant's sexual abuse of Minor A and Minor G above, which his sentencing memorandum refers to as a "great evil" (ECF No. 116 at 10), Defendant's history and characteristics, as set forth in the PSR, also reflect the need for 30 years of prison. Though Defendant's sentencing memorandum implies that his acts were isolated events that he would not do over, the PSR tells a different story. According to the PSR, Defendant also molested an 11-year old girl multiple times over the course of a couple years in Nevada starting in 1991. Defendant, approximately 23 years old at the time, touched the victim multiple times on her breasts and vulva as if he were tickling her. Another victim in the same case reported that Defendant abused her when she was between the ages of 5 and 8 years old by taking off her pants and underwear and examining her vagina with his finger or a Q-tip. In 2019, Defendant ultimately pleaded guilty in Nevada to Open or Gross Lewdness in the Presence of a Child or Vulnerable Person and was sentenced to 12 to 30 months imprisonment. *See* PSR ¶¶ 97-104. Defendant's history as a sexual predator shows the need for a 30-year term of imprisonment in this case to protect the public and prevent him from victimizing others.

Defendant's recommended sentence of 15 years is insufficient to ensure that he will not victimize more children upon release.

Additionally, the Court should discount Defendant's characterization of his Yakima County sentence as a "sentence of life imprisonment." Defendant's repeated inflation of his sentence to a "life sentence" does not erase the fact that he was sentenced to a minimum term of 10 years in prison, and up to life. As Defendant concedes, no one can predict how long he will serve on his state sentence, whether it be a mere 10 years, or life. Regardless, the United States recommends that the sentence herein be imposed concurrently to Defendant's state sentence given the related nature of the offenses.

The Court should also discount Defendant's effort to downplay the severity of the federal production of child pornography charges. Whether or not Defendant distributed child pornography, the fact is that he made a permanent visual record of the abuse of Minors A and G, presumably to gratify himself with later viewings. Why else would he make a record of it, but to view it at a later time?

Though Defendant agrees no double jeopardy concerns existed here, he nevertheless questions the merit of the instant federal charges, particularly as he contends he already received a "life sentence" from the state. ECF No. 116 at 10. Again, Defendant's characterization is inflated. He was not sentenced to life imprisonment in Yakima County. Rather, Defendant was sentenced to 10 years to life in prison, and Defendant may only end up serving 10 years for that offense. In addition, Defendant was not convicted in Yakima County for Defendant's conduct involving Minor G. Based on the foregoing, federal charges were wholly warranted here given the egregious nature of Defendant's production of child pornography as to two victims.

The government also disagrees with Defendant's contention that he is "capable of self-control." *Id.* at 11. Defendant's recent sexual abuse of two vulnerable children and his historical abuse of two other children in the 1990s dispels any idea that he will be capable of self-control anytime soon. Similarly, Defendant's contention that the

"circumstances created his crimes" in this case further refutes the idea that he is capable of self-control. Following Defendant's logic, if he were put in the wrong circumstances again, the "circumstances" might just cause him to recidivate and commit another child sex offense. With regard to Defendant's argument that he is unlikely to recidivate, the PSR again tells a different story. His sexual abuse of the two children in this case and his prior molestation of two other children unfortunately shows a long pattern of preying on children for sexual gratification.

Finally, Defendant's argument with regard to the Guidelines can also be tempered by the fact that though the Guidelines serve as a starting point for sentencing, the Section 3553(a) factors additionally guide the Court in sentencing. Additionally, "The child pornography Guidelines are, to a large extent, not the result of the Commission's 'exercise of its characteristic institutional role,' which requires that it base its determinations on 'empirical data and national experience,' but of frequent mandatory minimum legislation and specific congressional directives to the Commission to amend the Guidelines." *United States v. Henderson*, 649 F.3d 955, 962-63 (9th Cir. 2011). Therefore that district courts have discretion to deviate from the Guidelines based on policy disagreements with § 2G2.2. *Id.* at 964. However, as *Henderson* also noted, "district courts are not obligated to vary from the child pornography Guidelines on policy grounds if they do not have, in fact, a policy disagreement with them." Id. ("application of § 2G2.2 will always result in an unreasonable sentence"). "[S]entencing courts must continue to consider the applicable Guidelines range as the starting point and the initial benchmark." *Id.* (quotation omitted). If the Court believes the guidelines produce an appropriate sentence, it should not "second-guess [that] decisio[n] . . . simply because the particular Guideline is not empirically-based." *United States v. Mondragon-Santiago*, 564 F.3d 357, 367 (5th Cir. 2009); *see also United States v. Coleman*, 635 F.3d 380, 383 (8th Cir. 2011) ("argument that the child pornography Guidelines are unsupported by empirical evidence is not an issue of substantive reasonableness and not

Government's Response to
Defendant's Sentencing Memorandum          6

properly made to this court").

All of that said, in this case, the United States seeks a 30-year term of imprisonment on each count to run concurrent to each other and to Defendant's Yakima County sentence. Such a sentence accounts for the nature of Defendant's offense, his history and characteristics, and the need to provide just punishment, deter further criminal conduct, and protect the public. Based on Defendant's current and past victimization of children, a lifetime term of supervised release should also be imposed.

With regard to restitution, the Court has scheduled a separate restitution hearing in this case for February 10, 2020. The United States anticipates providing additional victim restitution documentation prior to that date to aid the Court in any restitution determination.

DATED: November 10, 2020

William D. Hyslop
United States Attorney

By: _s/ Ian L. Garriques_____
Ian L. Garriques
Assistant United States Attorney

I hereby certify that on November 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorney of record: Jeremy Sporn

_s/ Ian L. Garriques_____
Ian L. Garriques
Assistant United States Attorney